Filed 1/23/12

# IN THE SUPREME COURT OF CALIFORNIA

STEVE ROSSA et al.,

    Plaintiffs and Respondents,

    v.

D.L. FALK CONSTRUCTION, INC.,

    Defendant and Appellant.

S183523

Ct.App. 1/2 A125567

San Mateo County
Super. Ct. No. CIV442294

The filing of a notice of appeal does not stay enforcement of a judgment for the payment of money unless an undertaking is given. (Code Civ. Proc., § 917.1, subd. (a)(1).)[1] The undertaking may be in the form of a bond issued by a surety and filed in the trial court, promising payment of the judgment if it is affirmed, plus any interest accruing on the judgment during the pendency of the appeal and any costs that may be awarded against the appellant. (§ 917.1, subd. (b); see §§ 995.140, 995.150, 995.190, 995.210, 995.320, 995.340.) Insurance companies charge a fee or "premium" for a surety bond, and may also require the appellant to provide collateral for the bond, such as a letter of credit. (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2010) ¶ 7:113, p. 7-30.1.) If the appellant prevails, it may recover as costs on appeal "[t]he cost to

---

[1] All further statutory references are to this code unless otherwise noted.

1

procure a surety bond, including the premium and *the cost to obtain a letter of credit* as collateral . . . ." (Cal. Rules of Court, rule 8.278(d)(1)(F), italics added.)[2]

We address whether rule 8.278's reference to "the cost to obtain a letter of credit" extends to the interest expense incurred by an appellant to borrow funds to secure a letter of credit that was obtained to secure an appeal bond posted to stay enforcement of a money judgment during the pendency of the appeal.  For the reasons set forth below, we conclude that rule 8.278(d)(1)(F) does not extend to interest expenses incurred to borrow funds to provide security for a letter of credit.  Therefore, we affirm the judgment of the Court of Appeal.

## FACTS

In 2006, a jury awarded plaintiffs Steve and Connie Rossa damages for breach of contract, and the trial court awarded plaintiffs costs and attorney and expert witness fees.  Defendant D.L. Falk Construction, Inc., appealed the judgment.  Following a partial settlement of the dispute, a judgment in the amount of $635,000 remained.  To stay enforcement of the judgment pending appeal, defendant filed a bond issued by a surety insurer in the amount of $955,000, or approximately one and one-half times the judgment.  (§ 917.1, subd. (b) ["The undertaking . . . given by an admitted surety insurer . . . shall be for one and one-half times the amount of the judgment or order"].)  Thereafter, the Court of Appeal reversed the judgment.

On remand from this first appeal, defendant filed a cost memorandum seeking $147,814 in appellate costs.  The trial court allowed defendant to recover $17,139 in costs related to preparation of the appellate record and briefs.[3]  It also

---

[2]    All further references to rules are to the California Rules of Court.

[3]    The trial court allowed defendant to recover filing fees ($755), preparation of the clerk's transcript ($875), preparation of the reporter's transcript ($14,950),

*(Footnote continued on next page.)*

2

allowed defendant to recover sums related to two layers of costs incurred to stay enforcement of the judgment pending appeal: the premium charges on the appeal bond of $28,650 and bank fees of $950 for the letter of credit guaranteeing payment on the bond.[4] In sum, including expenses not in dispute here, the court allowed $46,739 of the $147,814 requested.

At issue is a third layer of costs defendant incurred to stay enforcement of the judgment. In this case, defendant seeks to recover the interest it paid on the sums it borrowed to secure the bank's letter of credit on the bond. We briefly summarize the pertinent factual premise.

To obtain the bond, the surety required defendant to provide a standby letter of credit to guarantee payment, if necessary, on the bond.[5] Defendant's bank agreed to issue a letter of credit in the amount of $954,070. It required defendant to deposit with the bank $954,070 to secure payment, if necessary, on the bank's letter of credit. Defendant deposited this amount by borrowing $483,070 from its line of credit with the bank, and $471,000 from the personal line of credit that one

_____

*(Footnote continued from previous page.)*

printing of briefs ($381), expenses of service ($53), and transmission and filing of record, briefs, and other papers ($125). Amounts have been rounded to the nearest dollar throughout the opinion.

[4]    Defendant paid the surety an annual premium equal to 1 percent of the $955,000 bond. The premium charges on the bond were $28,650 by the time the bond was discharged. The bank imposed a $900 fee for the letter of credit and two $25 fees for courier services for a total of $950.

[5]    A letter of credit is an undertaking by the issuer of the letter to pay or deliver an item of value to the beneficiary of the letter. (Cal. U. Com. Code, § 5102; 4 Witkin, Summary of Cal. Law (10th ed. 2005) Negotiable Instruments, § 137, p. 510.) A beneficiary of a "standby" letter of credit "expects the applicant to pay the beneficiary directly, and makes use of the letter only if the applicant fails to do so." (4 Witkin, *supra*, § 139 at p. 512.)

3

of defendant's principals had with the bank. Pursuant to an agreement between defendant and the principal, defendant was required to reimburse the principal the interest paid and expenses incurred in borrowing from his line of credit. Defendant paid $154,983 in interest on the two credit lines, and earned $55,694 in interest on the amounts deposited with the bank to secure payment on the letter of credit, for a net payment by defendant of $99,289 in interest. Defendant also paid a fee of $1,784 to extend defendant's line of credit with the bank an additional month before its appeal bond was discharged. The trial court denied recovery of the $99,289 in net interest payments and the $1,784 fee. Defendant again appealed, and the Court of Appeal agreed with the trial court that these two items were not recoverable as costs.

We granted review to address the scope of rule 8.278(d)(1)(F), which provides that a party may recover, "if reasonable," "[t]he cost to procure a surety bond, including the premium *and the cost to obtain a letter of credit as collateral*, unless the trial court determines the bond was unnecessary." (Italics added.) In particular, we address whether interest and fees paid to borrow funds to secure a letter of credit obtained as security for an appeal bond are recoverable as "cost[s] to obtain a letter of credit as collateral" for a surety bond.

## DISCUSSION

"The rules applicable to interpretation of the rules of court are similar to those governing statutory construction. [Citation.] Under those rules of construction, our primary objective is to determine the drafters' intent. [Citation.]" (*Silverbrand v. County of Los Angeles* (2009) 46 Cal.4th 106, 125.) "If the rule's language is clear and unambiguous, it governs. [Citation.] Experience teaches, however, that unforeseen ambiguities can and do come to light despite the drafters' considered efforts to avoid them. In such cases, courts may consult appropriate extrinsic sources to clarify the drafters' intent.

4

[Citation.]" (*Alan v. American Honda Motor Co., Inc*. (2007) 40 Cal.4th 894, 902.)

We begin with language of rule 8.278(d)(1)(F), which provides that a successful appellant may recover "the cost to obtain a letter of credit as collateral" for the appeal bond. Defendant relies on dictionary definitions, stating that "*Cost* means the 'amount paid or charged for something; price or expenditures.' (Black's Law Dict. 8th ed. 2004 [p. 371].) *Expenditure* is a 'sum paid out.' (*Id*.[ at p. 617.])" As noted above, the cost charged by the issuing bank for the letter of credit and courier fees was $950, which the trial court allowed defendant to recover. Due to the bank's requirement of security and defendant's financial circumstances, defendant also paid additional costs to borrow money to secure the letter of credit. The interest and fees paid to borrow these sums were not costs charged for the bank's letter of credit. Viewing the term "cost" more broadly, however, the payment of fees and interest on the sum borrowed for the deposit required by the bank as a condition to obtain the letter of credit can be seen as a cost defendant incurred to obtain the letter of credit.

In light of this ambiguity in the language, "we may consider a variety of extrinsic sources in order to identify the interpretation that best effectuates the [drafters'] intent. [Citation.]" (*Beal Bank, SSB v. Arter & Hadden LLP* (2007) 42 Cal.4th 503, 508.) As explained below, in the present matter, we undertake to determine the Judicial Council's intent when it amended former rule 26 in 1993 to allow the recovery of "the expense of acquiring a letter of credit." (Cal. Rules of Court, former rule 26(c)(6), eff. Jan. 1, 1994.)

Prior to the 1993 amendment, former rule 26(c) provided that "[t]he party to whom costs are awarded may recover only the following" listed items. (Former rule 26(c), as amended eff. July 1, 1968, printed at 68 Cal.2d 2.) Included in the list of recoverable items was "(5) the premium on any surety bond procured by the

5

party recovering costs, unless the court to which the remittitur is transmitted determines that the bond was unnecessary." (Former rule 26(c), as amended eff. July 1, 1968, printed at 68 Cal.2d at p. 3.)The breadth of this provision was addressed in *Geldermann, Inc. v. Bruner* (1992) 10 Cal.App.4th 640 (*Geldermann*). The appellant in *Geldermann* paid a $26,340 premium on his appeal bond, and $28,676 in charges for a letter of credit to secure the bond. The appellant urged the Court of Appeal "to construe rule 26(c) broadly, not strictly, to permit recovery of letter of credit charges as 'premiums' on a surety bond." (*Id.* at p. 642.) The Court of Appeal, in an opinion authored by Justice Donald King, declined, based on rule 26(c)'s allowance of "only" the listed items, and based on the principle of strict construction historically applied to provisions authorizing the recovery of costs. (*Geldermann, supra,* at pp. 642-643.) In response to the appellant's contention that the court's approach ignored "commercial realities," the court observed that "appellate costs are not made recoverable by the mere fact they are reasonable; they are recoverable only as authorized by statute or rule of court. [Citation.] Commercial realities might convince the Judicial Council to amend rule 26(c) to permit recovery of charges for letters of credit, but that has not yet happened." (*Id.* at p. 643.)

Thereafter, the Judicial Council's Appellate Standing Advisory Committee recommended adding to rule 26(c)'s list of recoverable costs the following: "other expense reasonably necessary to procure the surety bond, such as the expense of acquiring a letter of credit required as collateral for the bond." (Judicial Council of Cal., App. Standing Advisory Com. Rep. (July 20, 1993) Proposals Previously Circulated for Comment, etc., pp. 9-10.) The report's explanation of the rule proposal states that "Justice Donald King referred us to *Geldermann*[, *supra,*] 10 Cal.App.4th 640, which denied recovery, as costs, of the expense of a letter of credit required in order to obtain the appeal bond. He suggests amending rule 26

6

to allow recovery of such expense." (*Id*. at p. 3.) The provision was added, and became effective January 1, 1994. (Judicial Council of Cal., Mins. of Meeting Nov. 30, 1993, p. 26.) In 2003, when provisions concerning the recovery of costs were moved to former rule 27(c)(1)(E), the language was revised to allow recovery of "the cost to procure a surety bond, including the premium and *the cost to obtain a letter of credit as collateral* . . . ." (Italics added.) No substantive change was intended by the modification in the language. (Judicial Council of Cal., App. Standing Advisory Com. Rep. (Oct. 3, 2002) Revision of Appellate Rules etc., p. 2; Advisory Com. Com. to former rule 27.) The language italicized above was retained in 2007 when former rule 27 was renumbered as former rule 8.276(c)(1)(E); in 2008 the language was adopted as rule 8.278(d)(1)(F).

In interpreting this history of the Judicial Council's actions, defendant relies on the reference in *Geldermann* to "[c]ommercial realities [that] might convince the Judicial Council to amend [former] rule 26(c) to permit recovery of charges for letters of credit . . . ." (*Geldermann, supra*, 10 Cal.App.4th at p. 643.) In defendant's view, the commercial reality acknowledged in *Geldermann* is that appellants generally must borrow funds and incur interest charges in order to obtain a letter of credit to secure an appeal bond, and that such interest charges on borrowed funds were among the costs the Judicial Council intended to allow when it amended former rule 26 to refer to "other expense reasonably necessary to procure the surety bond, such as the expense of acquiring a letter of credit required as collateral for the bond." We disagree, for several reasons.

First, it is not clear to what reasonable recoverable expenses *Geldermann* was referring. According to the opinion, the appellant paid a premium on its appeal bond of $26,340 and a "charge" of $28,676 for a letter of credit to secure the appeal bond. The opinion's description of these facts does not suggest that the "charge" was an interest expense on funds borrowed to secure the letter of credit.

7

*Geldermann, supra*, 10 Cal.App.4th at pp. 641-641.) Defendant acknowledges that "the court's opinion is not clear on the point," but asserts "it is likely that bank charges of this size were made at least in part for an extension of credit to purchase the letter of credit and not merely as a letter-of-credit fee. By comparison, the fee for the letter of credit in this case was $950."

Although the charge in *Geldermann* was much greater than the $950 in charges for the letter of credit in the present matter, this fact does not indicate that the Judicial Council viewed the charge in *Geldermann* as attributable to interest expenses on funds borrowed to secure a letter of credit. Given the rough equivalence between the amount of the bond premium and the amount of the letter of credit charge in *Geldermann*, it is as likely that the charge referenced in the opinion was viewed by the Judicial Council as something analogous to the premium charged for a bond. This conclusion follows from a consideration of the nature of the several obligations at issue.

A surety bond is a "promise[] to answer for the debt, default, or miscarriage of another . . . ." (Civ. Code, § 2787.) "In suretyship, the risk of loss remains with the principal, while the surety merely lends its credit so as to guarantee payment or performance in the event that the principal defaults. [Citation.] In the absence of default, the surety has no obligation. [Citation.]" (*Cates Construction, Inc. v. Talbot Partners* (1999) 21 Cal.4th 28, 38.) Similarly, as noted above, a standby letter of credit is an undertaking to pay the applicant's obligation, but only if the applicant fails to pay the obligation. (*Ante*, p. 3, fn. 5.) Because these instruments are promises of payment upon certain contingencies, rather than loans, and because they are secured, thereby ensuring that there will be adequate recourse in the event the applicant fails to satisfy its obligations, they are obtained by paying a relatively modest annual fee. (See Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs, *supra,* ¶¶ 7:113 & 7:114, pp. 7-30.1, 7-30.2.) For example, in

8

this case, defendant paid a 1 percent annual premium for its surety bond, and in *Trans World Airlines, Inc. v. Hughes* (2d Cir. 1975) 515 F.2d 173, which was discussed in *Geldermann*, *supra*, 10 Cal.App.4th 640, the appellant paid a fee of ½ of 1 percent of the amount of its letter of credit. In contrast, borrowing money to secure a letter of credit entails an immediate transfer of funds and requires interest payments calculated at a higher percentage than charged for a secured guaranty of payment. The difference is illustrated by defendant's interest expenses, which are approximately three and one-half times the amount of its bond premium. Thus, when presented with the scenario in *Geldermann,* in which the charges for a bond premium and for letter of credit charges were roughly equal, it would have been reasonable for the Judicial Council to assume that the letter of credit charges were in the nature of a premium for the standby letter of credit rather than interest expenses incurred to borrow funds to secure the letter of credit.

Second, as alluded to earlier, provisions allowing the recovery of costs historically have been strictly construed. As enacted in 1872, former section 1033 authorized the award of "costs and necessary disbursements" to the prevailing party. (See also former § 1034 [applying former § 1033's provisions concerning the recovery of trial court costs to the recovery of appellate costs].) Despite the necessity of filing a bond to prevent execution of a money judgment pending appeal, the court in *Christenson v. Cudahy Packing Co*. (1927) 84 Cal.App. 237, held that the premiums paid on a surety bond to stay execution of a money judgment were not recoverable costs. "[T]he filing of the stay bond was a mere privilege and not a duty imposed upon the defendant in connection with the appeal. . . . Furthermore, the appellant was not required to file a surety bond for this purpose, but might have filed a personal bond for which no premium would have been required." (*Id*. at p. 239.) After section 1034 was amended in 1933 to allow recovery of "all amounts actually paid out by [the prevailing party] in

9

connection with said appeal, and the preparation of the record for the appeal, including the costs of printing briefs, and the production of additional evidence" (Stats. 1933, ch. 744, § 193, p. 1902), courts continued to construe the statutory provisions narrowly. (See *Eagle Oil & Refining Co. v. Prentice* (1942) 55 Cal.App.2d 161, 162-163 [payment for stenographic services by an appellant appearing in propria persona was not recoverable as a cost of preparing briefs; "predicament of defendant does not justify the court in allowing an expenditure which is not permitted by the statute"].)

The strict approach to the recovery of costs on appeal was retained after the Legislature empowered the Judicial Council to prescribe rules for appellate practice.[6] Bernard Witkin, the draftsman of the new appellate rules, stated that newly enacted rule 26(c) "adopts the pattern of Section 1034 . . . ."[7] (Witkin, *New California Rules on Appeal* (1943-1944) 17 So.Cal. L.Rev. 232, 258.) He observed that "[i]t is to be expected that a provision such as Rule 26(c) or its predecessor, which lists and narrowly limits the items, will be criticised on the ground that it must be strictly construed, and that other legitimate expenses

---

[6] Former section 961 provided that "The Judicial Council shall have the power to prescribe by rules for the practice and procedure on appeal, and for the time and manner in which the records on such appeals shall be made up and filed, in all civil actions and proceedings in all courts of this State." (Stats. 1941, ch. 477, § 1, pp. 1785-1786.) Section 1034 currently provides: "The Judicial Council shall establish by rule allowable costs on appeal and the procedure for claiming those costs." (§ 1034, subd. (b).)

[7] As adopted in March 1943, former rule 26(c) allowed the prevailing party on appeal to recover the cost of preparing the record, printing the briefs, and producing additional evidence. It also authorized recovery of filing and notary fees, and the expense of serving and filing the record, briefs and other papers. (Rules on Appeal, adopted by Judicial Council of Cal. Mar. 30, 1943, eff. July 1, 1943, printed at 22 Cal.2d 1, 19.)

incurred in unusual cases will not be recoverable[.] Some thought was given to the advisability of adding a catch-all provision, such as 'any amounts specifically awarded by the reviewing court,' or 'any other expense actually incurred in good faith in the taking or prosecution of the appeal.' But it seemed wiser to retain the present conservative rule than to reward the efforts of ingenious and imaginative attorneys." (*Id*. at pp. 258-259, fns. omitted.) Subsequently, courts have interpreted the cost rules in accordance with this approach. (See *Geldermann, supra*, 10 Cal.App.4th at p. 642.)

Construing rule 8.278(d)(1)(F) to extend to defendant's interest payments and fees related to its line of credit would be inconsistent with the historic principle that cost provisions are to be strictly construed. Neither the language of the rule nor its history indicates that the universe of items recoverable was being expanded by the Judicial Council in 1993 to include more remote or indirect costs of acquiring a letter of credit, such as interest and fees paid on credit lines from which funds were drawn to secure a letter of credit. Given that interest expenses may far exceed all other costs (more than tripling the costs in this case), we would expect a clear expression of an intent to allow the recovery of this item. As the Court of Appeal observed below, "courts do not lightly presume that substantial changes occur by 'misdirection,' 'vague terms or ancillary provisions,' or in a 'cryptic' manner. (*State Building & Construction Trades Council of California v. Duncan* (2008) 162 Cal.App.4th 289, 323.)" Moreover, interpreting the rule to reach indirect costs that are not clearly specified in the rule would invite litigation concerning the myriad ways in which the burden of providing security on appeal constitutes a "cost" to the appellant. As the court observed in *Sequoia Vacuum Systems v. Stransky* (1964) 229 Cal.App.2d 281, "[t]he necessity to set limits is obvious and dictates a close adherence to the clearly expressed legislative intent [citations]. For example, the extension [of the right to recover the premium on a

11

bond to allow the recovery of interest payments made to borrow funds deposited in lieu of a bond] would logically permit a party who was not required to borrow but could deposit his own money, to claim as costs the interest which he might otherwise be acquiring through investment elsewhere." (*Id.* at p. 289.)

Third, even if we were not required to strictly construe cost provisions, more general principles of statutory construction weigh in favor of construing rule 8.278's reference to "the cost to obtain a letter of credit" to encompass only the direct charges imposed in connection with the acquisition of a letter of credit. In construing this phrase, "we keep in mind that 'the meaning of the enactment may not be determined from a single word or sentence; the words must be construed in context . . . .' [Citation.] '[W]hen a statute contains a list or catalogue of items, a court should determine the meaning of each by reference to the others, giving preference to an interpretation that uniformly treats items similar in nature and scope. [Citations.] In accordance with this principle of construction, a court will adopt a restrictive meaning of a listed item if acceptance of a more expansive meaning would make other items in the list unnecessary or redundant, or would otherwise make the item markedly dissimilar to the other items in the list. [Citations.]' " (*Commission on Peace Officer Standards & Training v. Superior Court* (2007) 42 Cal.4th 278, 294.)

Rule 8.278(d)(1)(F) refers to two items — the cost of a surety bond and the cost of a letter of credit. As explained above, surety bonds and standby letters of credit are instruments that provide assurance that an obligation will be paid, but they do not involve a transfer of funds unless the applicant defaults. Due to its financial situation, an applicant may have to borrow assets to secure payment before these instruments will be issued, but borrowing funds is distinctly different from obtaining a bond and a standby letter of credit; a loan is a means *to acquire* assets to satisfy the judgment, while a bond and a letter of credit are a means *to*

12

*verify* that assets are available to pay the judgment. Due to these differences, the charges for a loan typically will be substantially greater than the charges for a secured bond or letter of credit. Moreover, interest charges and related fees for a loan may vary greatly, depending on the creditworthiness of the judgment debtor, current interest rates, and other terms of the loan, rendering such charges unpredictable and potentially many times greater in amount than other costs.

If we adopt a restrictive meaning of the reference in rule 8.278(d)(1)(F) to "the cost to obtain a letter of credit," interpreting it to encompass only the direct charges for a letter of credit, the cost will be similar in amount to "the cost to procure a surety bond," and similar in character with respect to the service it is acquiring — verification of assets. If we adopt a more expansive meaning, interpreting it to encompass interest charges and fees incurred to borrow funds to secure the letter of credit, that item of cost will be markedly dissimilar to "the cost to procure a surety bond," with respect to both the size and nature of the expenses incurred. Therefore, we adopt the restrictive meaning of "the cost to obtain a letter of credit," and reject an interpretation that encompasses interest expenses incurred in acquiring assets to secure a letter of credit.

In addition to asserting that the plain language and the Judicial Council history support its interpretation, defendant contends that "economic reality" and "fairness" favor the recovery of indirect interest expenses. Neither perceptions of economic reality nor notions of "fairness" authorize us to extend the right to costs beyond the items allowed by the rule. "In the absence of statutory authorization, it cannot avail that under the circumstances of a particular case it appears to a court that a charge is, as [a] matter of fact, fair and reasonable." (*Turner v. East Side Canal & Irrigation Co*. (1918) 177 Cal. 570, 573.) "[T]his is not a matter of

13

equity, but a rule which we must construe strictly." (*Geldermann, supra*, 10 Cal.App.4th at p. 644.)[8]

Finally, defendant relies on *Cooper v. Westbrook Torrey Hills* (2000) 81 Cal.App.4th 1294 (*Cooper*), in which the court allowed an appellant to recover as costs the interest expenses incurred on funds the appellant borrowed to deposit as an undertaking in order to stay foreclosure pending appeal. The court observed that former rule 26(c)(6) authorized the award of " 'expense[s] reasonably necessary to procure the surety bond,' " and that section 995.730 provides that " '[a] deposit given instead of a bond . . . is treated the same, and is subject to the same conditions, liability, and statutory provisions . . . as the bond.' " (*Cooper, supra,* at p. 1298.) The court concluded, "In order to read rule 26(c) consistent with section 995.730, the reasonable or necessary costs associated with procuring a deposit in lieu of a bond must be awarded to a prevailing party." (*Id*. at p. 1299, fn. omitted.)

In light of our conclusion that rule 8.278 does not authorize an award of interest expenses incurred to acquire assets to obtain a bond and letter of credit to stay enforcement of a judgment pending appeal, it follows that section 995.730 does not authorize an award of interest expenses incurred to acquire assets to deposit in lieu of a bond. Therefore, we disapprove the holding of *Cooper v. Westbrook Torrey Hills, supra*, 81 Cal.App.4th 1294.[9] We express no opinion

---

[8] Of course, the Judicial Council may consider whether to extend the right to recover costs to interest expenses and fees incurred to borrow funds to secure a letter of credit.

[9] In light of our disapproval of *Cooper v. Westbrook Torrey Hills, supra*, 81 Cal.App.4th 1294, defendant's contention that it would violate principles of equal protection to allow interest expenses to be recovered when a deposit is made in lieu of a bond, but not when a bond is filed, is moot.

14

with respect to whether section 995.730, which states that deposits are subject to the same statutory provisions as bonds, but does not refer to the Rules of Court, was intended to apply rules concerning bonds to deposits in lieu of bonds, notwithstanding the fact that the Legislature has delegated to the Judicial Council the responsibility for "establish[ing] by rule allowable costs on appeal and the procedure for claiming those costs."  (§ 1034, subd. (b).)

## CONCLUSION

We hold that rule 8.278(d)(1)(F) does not authorize an award of costs for interest expenses and fees incurred to borrow funds to deposit as security for a letter of credit that was procured to secure an appeal bond, and we affirm the judgment of the Court of Appeal.

CANTIL-SAKAUYE, C. J.

WE CONCUR:

KENNARD, J.
BAXTER, J.
WERDEGAR, J.
CHIN, J.
CORRIGAN, J.
LIU, J.

15

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Rossa v. D. L. Falk Construction, Inc.

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 184 Cal.App.4th 438
**Rehearing Granted**

_____

**Opinion No.** S183523
**Date Filed:** January 23, 2012

_____

**Court:** Superior
**County:** San Mateo
**Judge:** Marie S. Weiner

_____

**Counsel:**

Law Offices of Tony J. Tanke and Tony J. Tanke for Defendant and Appellant.

McLennon Law Corporation, Daniel F. McLennon and Marc L. Sherman for Plaintiffs and Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Tony J. Tanke
Law Offices of Tony J. Tanke
2050 Lyndell Terrace, Suite 240
Davis, CA  95616
(530) 758-4530

Marc L. Sherman
McLennon Law Corporation
550 California Street, Sacramento Tower, Suite 700
San Francisco, CA  94104
(415) 394-6688