Filed 9/9/13  Certified for publication  9/25/13 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ANDREINI & COMPANY,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>MacCORKLE INSURANCE SERVICE,<br>INC. et al.,<br><br>    Defendants and Respondents. | A133473<br><br>(San Mateo County<br>Super. Ct. No. CIV 463671) |

        For the second time in recent years we are called upon to construe the scope of rule 8.278 of the California Rules of Court (rule 8.278), which governs recovery of costs allowed following a successful appeal.  Last year the Supreme Court affirmed a decision by this court, and held that "rule 8.278(d)(1)(F) does not authorize an award of costs for interest expenses and fees incurred to borrow funds to deposit as security for a letter of credit that was procured to secure an appeal bond."  (*Rossa v. D.L. Falk Construction, Inc.* (2012) 53 Cal.4th 387, 399 (*Rossa*).)  Here, the respondent borrowed money to deposit with the trial court in lieu of securing an appeal bond.  After its appeal was successful, it was allowed to recover the more than $200,000 interest paid on the borrowed funds as a cost of appeal.  The costs were included in an amended judgment from which this timely appeal was perfected.

        We first consider whether rule 8.278 and the reasoning of *Rossa* preclude the appellant recovering the interest paid on the borrowed funds as a cost of appeal.  We conclude this type of interest is likewise precluded.  Next, we consider whether a recent amendment of rule 8.278, which expressly allows recovery of interest in this situation,

1

and which became effective during the pendency of this appeal, should be given retroactive application. We conclude that it should not. In light of these conclusions, we modify the amended judgment by deleting the interest, and affirm the modified, amended judgment.

## BACKGROUND

This dispute arose out of the decision of insurance broker Frederic Holbrook to change his employment from Andreini & Company (Andreini) to MacCorkle Insurance Service, Inc. (MacCorkle), taking a list of clients with him. At the conclusion of a bench trial, the trial court concluded that Holbrook did not breach his contract with Andreini or otherwise misappropriate Andreini's trade secrets. However, the court further concluded that MacCorkle and its chief executive officer Bernard Lauper were guilty of misappropriating Andreini's trade secrets. Damages were awarded against MacCorkle and Lauper in the amount of $1,275,000. Andreini, MacCorkle, and Lauper all appealed. Division Four of this District affirmed the judgment in favor of Holbrook, and reversed that part of the judgment against MacCorkle and Lauper. (*Andreini & Co. v. MacCorkle Ins. Service, Inc*. (Jan. 14, 2011, A124784) [non pub. opn.].) In short, it was a complete win for MacCorkle and Lauper (who will hereafter be collectively referred to as MacCorkle).

MacCorkle did not post an appeal bond, electing instead to deposit $2,057,668.97 with the clerk of the trial court, an amount he borrowed. In April 2011, following receipt of the remittitur, and after the Supreme Court had granted review of our decision in *Rossa*, MacCorkle filed a memorandum of costs for the expenses incurred on the appeal, seeking $214,771.40 representing the net interest on the amount borrowed, identifying this item as "other expenses reasonably necessary to secure surety bond." No longer able to rely on our opinion in *Rossa*, but clearly hoping that its reasoning would be vindicated, Andreini moved to tax this item of MacCorkle and Lauper's claimed costs. Relying on *Cooper v. Westbrook Torrey Hills, LLP* (2000) 81 Cal.App.4th 1294 (*Cooper*), which we had declined to follow in our *Rossa* opinion, MacCorkle argued that the interest was allowable under rule 8.278. The matter was extensively argued to the trial court in July

2

2011.  Believing "the equities in this case probably weigh against the award of the interest," the court nevertheless felt bound to follow *Cooper*.  The court then entered an amended judgment awarding MacCorkle "$221,324.52 in costs on appeal . . . pursuant to Rule 8.278," from which Andreini perfected this timely appeal.

## REVIEW

### *Rossa*

In *Rossa,* our Supreme Court considered that part of rule 8.278 which at the time authorized recovery as appeal costs "The cost to procure a surety bond, including the premium, the cost to obtain a letter of credit as collateral, and the fees and net interest expenses incurred to borrow funds to provide security for the bond or to obtain a letter of credit, unless the trial court determines the bond was unnecessary." (Rule 8.278(d)(1)(F).)  The appellant in *Rossa* had secured a standby letter of credit for $954,070 that a surety required before posting an appeal bond.  The bank issuing the letter of credit in turn required the appellant to deposit the face value of the letter of credit with the bank.  The appellant had to borrow the money to satisfy the bank's requirement, thereby incurring almost $100,000 in interest, plus a fee of more than $1,700 to extend the line of credit.  Having won on appeal, the appellant sought to recover these sums, and was rejected by the trial court, then by this court, and finally by the Supreme Court. (*Rossa, supra,* at p. 391.)  Two points of the Supreme Court's decision are central.

*First*, after an extensive examination of the principles governing recovery of costs of appeal and the evolution of what is now rule 8.278, the court noted that "provisions allowing the recovery of costs historically have been strictly construed," and that this approach "was retained after the Legislature empowered the Judicial Council to prescribe rules for appellate practice." (*Rossa*, *supra,* at p. 395.)  The court then explained why this history and approach supported denying recovery of the fee and interest related to the letter of credit:

"Construing rule 8.278(d)(1)(F) to extend to defendant's interest payments and fees related to its line of credit would be inconsistent with the historic principle that cost provisions are to be strictly construed.  Neither the language of the rule nor its history

3

indicates that the universe of items recoverable was being expanded by the Judicial Council in 1993 to include more remote or indirect costs of acquiring a letter of credit, such as interest and fees paid on credit lines from which funds were drawn to secure a letter of credit. Given that interest expenses may far exceed all other costs (more than tripling the costs in this case), we would expect a clear expression of an intent to allow the recovery of this item. As the Court of Appeal observed below, 'courts do not lightly presume that substantial changes occur by "misdirection," "vague terms or ancillary provisions," or in a "cryptic" manner. [Citation.]' . . . . [¶] . . . [E]ven if we were not required to strictly construe cost provisions, more general principles of statutory construction weigh in favor of construing rule 8.278's reference to 'the cost to obtain a letter of credit' to encompass only the direct charges imposed in connection with the acquisition of a letter of credit. . . .

"Rule 8.278(d)(1)(F) refers to two items—the cost of a surety bond and the cost of a letter of credit. As explained above, surety bonds and standby letters of credit are instruments that provide assurance that an obligation will be paid, but they do not involve a transfer of funds unless the applicant defaults. Due to its financial situation, an applicant may have to borrow assets to secure payment before these instruments will be issued, but borrowing funds is distinctly different from obtaining a bond and a standby letter of credit; a loan is a means *to acquire* assets to satisfy the judgment, while a bond and a letter of credit are a means *to verify* that assets are available to pay the judgment. Due to these differences, the charges for a loan typically will be substantially greater than the charges for a secured bond or letter of credit. Moreover, interest charges and related fees for a loan may vary greatly, depending on the creditworthiness of the judgment debtor, current interest rates, and other terms of the loan, rendering such charges unpredictable and potentially many times greater in amount than other costs.

"If we adopt a restrictive meaning of the reference in rule 8.278(d)(1)(F) to 'the cost to obtain a letter of credit,' interpreting it to encompass only the direct charges for a letter of credit, the cost will be similar in amount to 'the cost to procure a surety bond,' and similar in character with respect to the service it is acquiring—verification of assets.

4

If we adopt a more expansive meaning, interpreting it to encompass interest charges and fees incurred to borrow funds to secure the letter of credit, that item of cost will be markedly dissimilar to 'the cost to procure a surety bond,' with respect to both the size and nature of the expenses incurred. Therefore, we adopt the restrictive meaning of 'the cost to obtain a letter of credit,' and reject an interpretation that encompasses interest expenses incurred in acquiring assets to secure a letter of credit." (*Rossa*, *supra,* at pp. 396-397.)

*Second*, the court addressed *Cooper*:

"[D]efendant relies on *Cooper*. . . in which the court allowed an appellant to recover as costs the interest expenses incurred on funds the appellant borrowed to deposit as an undertaking in order to stay foreclosure pending appeal. The court observed that former rule 26(c)(6) [the predecessor to rule 8.278] authorized the award of ' "expense[s] reasonably necessary to procure the surety bond," 'and that [Code of Civil Procedure] section 995.730 provides that ' "[a] deposit given instead of a bond . . . is treated the same, and is subject to the same conditions, liability, and statutory provisions . . . as the bond." ' (*Cooper, supra,* at p. 1298.) The court concluded, 'In order to read rule 26(c) consistent with section 995.730, the reasonable or necessary costs associated with procuring a deposit in lieu of a bond must be awarded to a prevailing party.' ( *Id.* at p. 1299, fn. omitted.)

"In light of our conclusion that rule 8.278 does not authorize an award of interest expenses incurred to acquire assets to obtain a bond and letter of credit to stay enforcement of a judgment pending appeal, it follows that section [Code of Civil Procedure] 995.730 does not authorize an award of interest expenses incurred to acquire assets to deposit in lieu of a bond. Therefore, we disapprove the holding of *Cooper v. Westbrook Torrey Hills* . . . . We express no opinion with respect to whether [Code of Civil Procedure] section 995.730, which states that deposits are subject to the same statutory provisions as bonds, but does not refer to the California Rules of Court, was intended to apply rules concerning bonds to deposits in lieu of bonds, notwithstanding the fact that the Legislature has delegated to the Judicial Council the responsibility for

5

'establish[ing] by rule allowable costs on appeal and the procedure for claiming those costs.' ([Code of Civil Procedure] § 1034, subd. (b).)" (*Rossa*, *supra,* at p. 398, fn. omitted.)

Andreini sees reversal as a simple matter of stare decisis, because in *Rossa* the Supreme Court reached the categorical conclusion that "Rule 8.278(d)(1)(F) does not allow recovery of interest expense." By contrast, MacCorkle labors mightily to distance itself from *Rossa,* and delineates what it claims proves that "the development of the rules relating to the award of costs on appeal demonstrates a steady expansion of recoverable costs." MacCorkle then insists that "the statutes," particularly Code of Civil Procedure section 995.730, "provide a separate and independent basis for an award of costs." Moreover, "the rules as adopted by the Judicial Council cannot be inconsistent with the statutes adopted by the Legislature."

We agree, almost entirely, with Andreini. The only point of our disagreement is that stare decisis is not truly a factor. "Under the doctrine of stare decisis, all tribunals exercising inferior jurisdiction are required to follow decisions of courts exercising superior jurisdiction." (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) "An appellate decision is not authority for everything said in the court's opinion, but only 'for the points actually involved and actually decided.' " (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 620.) The classic statement dates to 1860: "A decision is not . . . authority except upon the point actually passed upon by the Court and directly involved in the case." (*Hart v. Burnett* (1860) 15 Cal. 530, 598.) The point actually involved and decided in *Rossa* was the holding quoted at the start of this opinion. We are not dealing with that point—whether the interest costs of a letter of credit used in lieu of an appeal bond could be recovered under rule 8.278(d)(1)(F)—but the closely related issue of whether the interest costs of money borrowed for deposit with the court in lieu of an appeal bond can be recovered under rule 8.278.

*Rossa*'s two statements concerning deposits in lieu of bonds occur in that precise and limited context. First, the Supreme Court quoted with approval a 1964 decision by this court when discussing the necessity of strictly construing rule 8.278: "Moreover,

6

interpreting the rule to reach indirect costs that are not clearly specified in the rule would invite litigation concerning the myriad ways in which the burden of providing security on appeal constitutes a "cost" to the appellant. As the court observed in *Sequoia Vacuum Systems v. Stransky* (1964) 229 Cal.App.2d 281, '[t]he necessity to set limits is obvious and dictates a close adherence to the clearly expressed legislative intent [citations]. For example, the extension [of the right to recover the premium on a bond to allow the recovery of interest payments made to borrow funds deposited in lieu of a bond] would logically permit a party who was not required to borrow but could deposit his own money, to claim as costs the interest which he might otherwise be acquiring through investment elsewhere." (*Id.* at p. 289.)" (*Rossa*, *supra,* at p. 396.)

Second, in disapproving *Cooper*'s construction of Code of Civil Procedure section 995.730, the court stated: "In light of our conclusion that rule 8.278 does not authorize an award of interest expenses incurred to acquire assets to obtain a bond and letter of credit to stay enforcement of a judgment pending appeal, it follows that section 995.730 does not authorize an award of interest expenses incurred to acquire assets to deposit in lieu of a bond." (*Rossa*, *supra,* at p. 398.)

Still, if *Rossa* is not dispositive, it does provide the analytical template. *Rossa* made it clear that the matrix governing the recovery of appellate costs are the statutes devoted to that subject and rule 8.278, all strictly construed. With the exception of the 2012 amendment of rule 8.278, which we address separately, nothing in the matrix has changed. Code of Civil Procedure section 995.730, the basis for the *Cooper* decision, has not been amended to add language expressly dealing with costs on appeal. Thus, for purposes of this part of our analysis, the rule of strict construction endorsed in *Rossa* still operates. The Supreme Court's statement that "Construing rule 8.278(d)(1)(F) to extend to defendant's interest payments and fees related to its line of credit would be inconsistent with the historic principle that cost provisions are to be strictly construed" (*Rossa*, *supra,* at p. 396) is no less applicable to interest related to a sum deposited with the court. (See Civ. Code, § 3511 ["Where the reason is the same, the rule should be the same"].)

7

MacCorkle next argues that "*Rossa* discussed but did not decide the direct cost recoverability issue." But that issue was subsumed within *Rossa*'s discussion of the rule of strict construction.

MacCorkle's final attempt to break free of *Rossa* is to advance an issue that was not considered by the Supreme Court. MacCorkle contends that "allowing a plaintiff to recover interest at ten percent per year during the course of an appeal but prohibiting [a] defendant and appellant from recovering the cost incurred to deposit the funds to stay enforcement violate[s] the defendant's right to equal protection." Although something like this claim was mentioned briefly during the extensive argument heard by the trial court on Andreini's motion to tax, nothing like it can be found in MacCorkle's written opposition. Andreini responds that the single oral mention (consisting of 12 lines in the reporter's transcript) was inadequate to preserve the issue for appellate review. We agree with Andreini. (*People v. Burgener* (2003) 29 Cal.4th 833, 860-861, fn. 3; *Hershey v. Reclamation District No. 108* (1927) 200 Cal. 550, 564; *Fourth La Costa Condominium Owners Assn. v. Seith* (2008) 159 Cal.App.4th 563, 585.)

Although we have the discretion to relax the rule in order to consider a pure issue of law, particularly if it implicates an important issue of public policy, or if it is not dependent on the production of additional evidence (e. g., *Adams v. Murakami* (1991) 54 Cal.3d 105, 115, fn. 5; *Hale v. Morgan* (1978) 22 Cal.3d 388, 394; 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 415, pp. 473–474), we decline to do so. The issue of costs seems particularly one where specific dollars-and-cents comparisons would be most pertinent. This was the approach we adopted when addressing a very similar claim in our *Rossa* opinion. Although our decision no longer had any authority because the Supreme Court had granted review, like Banquo's ghost it infused both sides' arguments in the trial court. It is most appropriate to remind McCorkle of this detail, the same one it accused Andreini in the trial court of trying to evade, which removes any element of surprise in McCorkle's omission. Put bluntly, McCorkle has no valid excuse for waiting until this appeal to develop the argument for the first time.

8

In conclusion, although *Rossa*'s examination of letter of credit costs does not qualify as direct, controlling precedent, its reasoning is highly germane. The logic of the approach adopted by the Supreme Court in *Rossa* easily transfers to the arguments made here concerning borrowed deposit costs.

## Rule 8.278(d)(1)(G)

In *Rossa*, our Supreme Court noted, notwithstanding its construction of rule 8.278, "Of course, the Judicial Council may consider whether to extend the right to recover costs to interest expenses and fees incurred to borrow funds to secure a letter of credit." (*Rossa*, *supra*, at p. 398, fn. 8.) The Judicial Council did so consider. In October 2012, and in response to *Rossa*, it amended rule 8.278(d)(1)(F)—with the language we italicize below—and added rule 8.278(d)(1)(G) to provide for recovery of:

"(F) The cost to procure a surety bond, including the premium, and the cost to obtain a letter of credit as collateral, *and the fees and net interest expenses incurred to borrow funds to provide security for the bond or to obtain a letter of credit*, unless the trial court determines the bond was unnecessary*; and*

"(G) The fees and net interest expenses incurred to borrow funds to deposit with the superior court in lieu of a bond or undertaking, unless the trial court determines the deposit was unnecessary."

"Rules adopted by the Judicial Council . . . shall take effect on a date to be fixed in the order of adoption." (Gov. Code, § 68072.) The Judicial Council specified that these changes to rule 8.278 would take effect on January 1, 2013. The parties were asked to file supplemental briefs on the effect of rule 8.278 (d)(1)(G).

Rules of Court are interpreted according to the same principles governing interpretation of statutes. (*Rossa*, *supra*, at p. 391; *Alan v. American Honda Motor Co., Inc*. (2007) 40 Cal.4th 894, 902.) With respect to statutes, our Supreme Court has held there is a "strong presumption" against applying them retroactively. (*McClung v. Employment Development Dept*. (2004) 34 Cal.4th 467, 475; see *Save Our Forest & Ranchlands v. County of San Diego* (1996) 50 Cal.App.4th 1757, 1763 [considering retroactive application of amended Rule of Court].) " '[A] statute's retroactivity is, in the

9

first instance, a policy determination for the Legislature and one to which courts defer absent "some constitutional objection" to retroactivity.' [Citation.] . . . '[A] statute may be applied retroactively only if it contains express language of retroactivity *or* if other sources provide a clear and unavoidable implication that the Legislature intended retroactive application.' [Citation.]" (*McClung v. Employment Development Dept.*, *supra*, at p. 475) A statute is deemed to be retroactive if it *substantially* changes the legal consequences of past events. (*Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 230-231; *Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243.)

The operative question is whether the Judicial Council intended the changes to rule 8.2678 to operate prior to the effective date of those changes. This inquiry involves a pure issue of law to which we bring our independent, de novo review. (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 527; *In re Tobacco II Cases* (2009) 46 Cal.4th 298, 311.)

If rule 8.278(d)(1)(G) were to be applied here, Andreini's liability for MacCorkle's costs would zoom from $6,553.12 to $221,324.52. That would clearly qualify as "new or different liabilit[y]," an " ' "increase[d] . . . liability," ' "and thus a *substantial* change in the " 'legal consequences of past conduct.' " (*Quarry v. Doe I* (2012) 53 Cal.4th 945, 956.) Imposition of the vastly greater sum is far too significant to be characterized as a mere non-retroactive clarification of existing law. (See *Colmenares v. Braemar Country Club, Inc.* (2003) 29 Cal.4th 1019, 1024, fn. 2.)

This is confirmed by the only thing approaching explanatory history for the changes to rule 8.278. The report of the Appellate Advisory Committee to the Judicial Council, after summarizing *Rossa*, stated: "This proposal amends rule 8.278 . . . to provide that the net interest expenses and fees incurred to borrow funds for deposit as security for an appeal bond, a letter of credit procured to secure an appeal bond, or a deposit with the superior court in lieu of an appeal bond are all recoverable costs. *This change will remedy a problem* that causes significant costs to parties who wish to appeal money judgments." The report further advised the Council that the changes "may impose a *significant new cost* on respondents if the appellant prevails on appeal." (Appellate

10

Advisory Com., Judicial Council of Cal., Rep. on Appellate Procedure: Recoverable Costs on Appeal (Aug. 27, 2012) pp. 3, 5, italics added.) There is nothing in the report indicating an intent for retroactive application. Indeed, even the brief postponement of the amended rule's effective date (from October 26, 2012 to January 1, 2013) evidences purely prospective application. (See *People v. Floyd* (2003) 31 Cal.4th 179, 187.) We defer to the Judicial Council's decision, and conclude that the presumption against retroactive application has not been overcome. (*McClung v. Employment Development Dept.*, *supra*, 34 Cal.4th 467, 475.)

The preceding establishes that rule 8.278(d)(1)(G) is not to receive retroactive application to this appeal, which at all relevant times has been governed by the version of rule 8.278 considered by our Supreme Court in *Rossa*. That version, strictly construed, made no allowance for a successful appellant to recover the interest incurred on borrowed funds used to make a deposit in place of an appeal bond. The trial court thus erred in denying MacCorkle's motion to tax Andreini's effort to recover that interest as a cost of appeal.

## DISPOSITION

That portion of the amended judgment awarding MacCorkle "$221,324.52 in costs on appeal . . . pursuant to Rule 8.278" is modified to "$6,553.12 in costs on appeal . . . pursuant to Rule 8.278." As so modified, the judgment is affirmed. Andreini shall recover its costs on this appeal.

_____
Richman, J.

We concur:

_____
Kline, P.J.

_____
Haerle, J.

11

Filed 9/25/13 after filing
nonpublished opinion on 9/9/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ANDREINI & COMPANY,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>MacCORKLE INSURANCE SERVICE,<br>INC. et al.,<br><br>      Defendants and Respondents. | A133473<br><br>(San Mateo County<br>Super. Ct. No. CIV 463671)<br><br>**ORDER CERTIFYING OPINION<br>FOR PUBLICATION** |

**THE COURT:**

      The opinion in the above-entitled matter filed on September 9, 2013, was not certified for publication in the Official Reports.  For good cause appearing and pursuant to California Rules of Court, rule 8.1105, the opinion in the above-entitled matter is ordered certified for publication in the Official Reports.


Dated: _____               _____
                                             Kline, P.J.

1

Trial Court:                              San Mateo Superior Court

Trial Judge:                            Honorable Gerald J. Buchwald

Attorney for Plaintiff and Appellant:     Hanson Bridgett, Joseph M. Quinn, Adam W. Hofmann; David Jay Morgan

Attorneys for Defendants and Respondents:  Hayes Scott Bonino Ellingson & McLay, Mark G. Bonino, Stephen P. Ellingson, Jamie A. Radack; CMD Associates, C. Matthew Didaleusky