**Alan KLAPMEIER, Appellant,**

v.

**CIRRUS INDUSTRIES, INC., Respondent,**

**Cirrus Holding Company, Ltd., Defendant.**

A14-1725
A14-2217

Supreme Court of Minnesota.

Filed: August 16, 2017

ments. Instead, Wilson made no offer of proof.

Edward P. Sheu, Ashleigh M. Leitch, Best & Flanagan LLP, Minneapolis, Minnesota, for appellant.

Bruce Jones, Aaron D. Van Oort, Erin L. Hoffman, Jeffrey P. Justman, Faegre Baker Daniels, LLP, Minneapolis, Minnesota, for respondent.

## OPINION

ANDERSON, Justice.

A jury awarded appellant Alan Klapmeier $10 million on his claim against respondent Cirrus Industries, Inc. The court of appeals reversed the jury's verdict and granted in part Cirrus's request to tax costs and disbursements for the appeal. Specifically, the court of appeals awarded $671,863.88 to Cirrus, most of which was for the interest that Cirrus incurred on a loan that it obtained to enable it to post a supersedeas bond, which was used to secure the judgment on the jury's verdict during the appeal. Asserting that the interest is not taxable on appeal, Klapmeier sought review of the court of appeals' taxation decision under either Minn. R. Civ. App. P. 117 or by granting a petition for a writ of prohibition under Minn. R. Civ. App. P. 120. We granted Klapmeier's petition for review and agreed to hear the petition for a writ of prohibition, directing the parties to also address our authority to review a decision of the court of appeals that taxes costs and disbursements. We now hold that, although review of the court of appeals taxation decisions is not permitted under Rule 117, we retain the discretionary authority to grant a petition under Rule 120 for a writ of mandamus or prohibition to address such a decision. Further, we conclude that Minn. R. Civ. App. P. 139 does not permit the taxation of borrowing costs in the circumstances presented here. Thus, we grant the writ of prohibition, reverse the court of appeals' decision to allow taxation of those costs, and direct the Clerk of the Appellate Courts to tax costs and disbursements as set forth below.

## FACTS

Alan Klapmeier was one of the founders of Cirrus Industries, Inc., a Duluth-based aircraft manufacturer. Klapmeier was removed from his position as Chief Executive Officer at Cirrus in 2008. In 2011, Klapmeier and Cirrus settled certain claims between them with an agreement that included a non-disparagement clause. In 2012, Klapmeier claimed that Cirrus breached the non-disparagement clause and in 2014 a jury agreed, awarding Klap-

meier $10 million. Cirrus then moved for judgment as a matter of law, a new trial, and remittitur. Cirrus also moved to stay entry of judgment on the jury's verdict while its posttrial motions were pending before the district court. In response, Klapmeier asked the district court to require Cirrus to post a bond for the full amount of the jury's verdict, plus ten percent prejudgment interest, to ensure that Cirrus could pay the judgment if its appeal was unsuccessful. In March 2014, the district court ordered Cirrus to post a bond to secure the $10 million award.[1]

Cirrus considered various options for posting the security, ultimately deciding to secure a supersedeas bond through a loan and a letter of credit. Specifically, Aon Risk Insurance Services West, Inc. (Aon) agreed to provide Cirrus with a $12 million bond if Cirrus obtained a $12 million letter of credit as collateral and paid $96,000 in premiums per year. To obtain the letter of credit, Cirrus borrowed $12 million from Superior Aerospace Insurance Company (SAIC), Cirrus's affiliated captive insurance company, under terms set out in a promissory note, including that Cirrus owed SAIC 4.25 percent interest. Cirrus deposited the $12 million with a Los Angeles bank. In return, the bank gave Cirrus a $12 million certificate of deposit and issued an irrevocable letter of credit to Aon. Having obtained the letter of credit that it requested, Aon issued the $12 million supersedeas bond to Cirrus, and Cirrus posted the bond.

The district court denied Cirrus's posttrial motions and Cirrus appealed. In 2015, the court of appeals reversed, holding that the evidence was insufficient to support the jury's finding as to the amount of

damages awarded to Klapmeier. *Klapmeier v. Cirrus Indus., Inc.*, Nos. A14-1725, A14-2217, 2015 WL 5194755, at *1 (Minn. App. Sept. 8, 2015). We denied review. *Klapmeier*, Nos. A14-1725, 14-2217, Order (Minn. filed Nov. 25, 2015).

After the court of appeals filed its decision, Cirrus filed a timely request to tax costs and disbursements for the appeal. As relevant here, Cirrus sought $192,000 in "bond costs," representing the premiums paid for the supersedeas bond, and $743,750 in "borrowing costs," representing the interest owed to SAIC on the loan that Cirrus used to obtain the letter of credit to secure the supersedeas bond.

Klapmeier objected to the requested taxation on several grounds, arguing specifically with respect to the claimed borrowing costs that the taxation of interest payments is not authorized by Minnesota law. Klapmeier also argued that because Cirrus's claim to borrowing costs was based on a loan that it obtained from an affiliated entity, Cirrus was essentially borrowing money from itself and did not actually incur any expenses. Finally, Klapmeier requested discovery and an evidentiary hearing on Cirrus's proposed taxation.

The court of appeals denied Klapmeier's request for discovery and an evidentiary hearing because those procedures are not authorized by the appellate rules. *Klapmeier*, Nos. A14-1725, A14-2217, Order at 2 (Minn. App. filed Jan. 22, 2016). Then, the court of appeals allowed taxation of some disbursements, including some of the bond premium payments, and reduced the amounts taxed for other disbursements. *Id.* at 3-5. Regarding the borrowing costs, the court of appeals found that some of

---

1. Although the district court originally ordered Cirrus to post a $10 million bond, it later amended the order, at Cirrus's request, to allow Cirrus to choose whether to post a $12 million bond, a $12 million cashier's check, or a $12 million certified check (the increased amount reflecting interest on the jury's award during the appeal).

Cirrus's borrowing costs were incurred during proceedings in the district court, rather than the appeal, and therefore could not be taxed by the court of appeals. *Id.* at 5-6. But the court allowed taxation of $542,583.33 in borrowing costs, concluding that Klapmeier did not establish that those costs were clearly excessive. *Id.*

Klapmeier petitioned for review of the court of appeals' order and, in the alternative, for a writ of prohibition. We granted review and agreed to hear the petition for a writ of prohibition. We also directed the parties to address our authority to review a court of appeals award of costs and disbursements.

## ANALYSIS

### I.

We begin with our authority to review an award of costs and disbursements made by the court of appeals. We have the authority to review "any decision of the Court of Appeals." Minn. R. Civ. App. P. 117, subd. 2. But our rules also state that "no appeal from the taxation of costs and disbursements" is allowed. Minn. R. Civ. App. P. 139.04.

Klapmeier argues that the court of appeals' taxation decision "deviates from Minnesota law," making it the type of case in which we should exercise our supervisory and discretionary authority over the lower courts under Minn. R. Civ. App. P. 117, particularly when a decision on taxation "deviates from Minnesota law, creates new law, or denies due process of law."[2]

In the alternative, Klapmeier asserts that a writ of prohibition under Minn. R. Civ. App. P. 120 is appropriate because the only other remedy available to the party facing taxation—to assert objections to the requested taxation, Minn. R. Civ. App. P. 139.04—has been exhausted by the time relief is sought by way of a writ.

Cirrus acknowledges that we have the authority to review any judicial action, but argues that we should decline to review the court of appeals taxation decisions based on the plain and unambiguous language of Rule 139.04. Further, as Cirrus notes, we have declared that "decisions regarding costs and disbursements are final" and not reviewable under Minn. R. Civ. App. P. 117. *Kelly v. Ellefson*, No. A04-0615, Order at 2 (Minn. Sept. 18, 2006); *see also Dargi v. City of Golden Valley*, No. A12-2293, Order at 4 (Minn. Jan. 31, 2013) (quoting *Kelly* and recognizing that Rule 139.04 prohibits an appeal from an award of costs and disbursements).

Cirrus next argues that a writ of prohibition is not an appropriate remedy because an extraordinary writ is available only when a lower court has "clearly exceeded any arguable authority." Arguing that the exercise of discretionary authority to tax certain allowable costs and disbursements does not exceed any arguable authority, Cirrus contends that reviewing these decisions through an extraordinary writ proceeding would render meaningless the plain language of Minn. R. Civ. App. P. 139.04 (stating that "[t]here shall be no

---

**2.** Klapmeier also argues that the court of appeals violated his due process rights by not allowing discovery and an evidentiary hearing regarding the reasonableness of the costs and disbursements that Cirrus claimed. Klapmeier did not raise a due process claim in the court of appeals, however, and in his petition for review and alternative petition for a writ of prohibition, he did not challenge the court of appeals' denial of his request for discovery and an evidentiary hearing. Therefore, we will not address Klapmeier's due process arguments or the court of appeals' denial of discovery and an evidentiary hearing on Cirrus's proposed taxation. *See In re GlaxoSmithKline PLC*, 699 N.W.2d 749, 757 (Minn. 2005) ("Generally, we do not address issues that were not raised in a petition for review.").

appeal from the taxation of costs and disbursements").

■ Interpretation of the Rules of Civil Appellate Procedure is a question of law, which we review de novo. *Madson v. Minn. Min. & Mfg. Co.*, 612 N.W.2d 168, 170 (Minn. 2000). We will follow the plain and unambiguous language of a procedural rule. *Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 601 (Minn. 2014). We read a procedural rule "as a whole," interpreting each rule in light of surrounding sections in order to avoid rendering superfluous any other word, phrase, or sentence. *State v. Dahlin*, 753 N.W.2d 300, 305-06 (Minn. 2008).

■ The scope of our discretionary authority to review decisions of the court of appeals is broad; we have the authority to review "any decision" of that court. Minn. R. Civ. App. P. 117, subd. 2; *see Hyatt v. Anoka Police Dept.*, 691 N.W.2d 824, 826 (Minn. 2005) (stating that "[t]he word 'any' is given broad application in statutes"). But this broad review authority is constrained by the more specific provision in Rule 139.04, which prohibits an appeal from a specific decision, namely, "the taxation of costs and disbursements." Typically, a specific provision prevails over a more general provision. *See, e.g.*, Minn. Stat. § 645.26, subd. 1 (2016) (explaining that the "special provision shall prevail and shall be construed as an exception to the general provision"); *Mumm v. Mornson*, 708 N.W.2d 475, 492 (Minn. 2006) ("Widely-accepted rules of construction dictate that specific provisions control over general provisions."). Moreover, we have relied on the particular exception stated in Rule 139.04 in declining to exercise our discre-

tionary review authority under Minn. R. Civ. App. P. 117, *See Kelly*, No. A04-0615, Order at 2 (stating that "decisions regarding costs and disbursements are final" and dismissing a petition for review of a court of appeals decision on taxation).

We did, however, grant review in *Lund v. Commissioner of Public Safety*, 783 N.W.2d 142 (Minn. 2010), but we conclude that *Lund* is not applicable here. There, the Commissioner of Public Safety sought review of the State's liability for taxed costs and disbursements in a nontort civil case.[3] *Id.* at 143. Thus, the taxability of certain incurred expenses was not at issue; rather, the issue we addressed was "the general rule . . . that the taxation of costs and disbursements is not permitted against the State when it acts in its sovereign capacity." *Id.* As *Lund* did not discuss the relationship between Rules 117 and 139.04, and the issue addressed in *Lund* was of a broader, more general nature—the application of sovereign immunity as opposed to the taxability of specific costs and disbursements—we do not find *Lund* applicable here.

■ When we consider our discretionary authority to review "any" decision of the court of appeals in light of the unambiguous language of the specific provision in Rule 139.04, as we must, *see Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000) (explaining that we construe statutes "in light of the surrounding sections"), we conclude that a petition filed under Minn. R. Civ. App. P. 117 that seeks our review of a court of appeals decision that taxes costs and disbursements is not permitted.

---

**3.** Notably, in the Commissioner's petition for review in *Lund*, he suggested that we consider the petition as one for a writ of prohibition if we concluded that review under Rule 117 was not proper in light of the exception stated in

Minn. R. Civ. App. P. 139.04. Petition for Review, *Lund v. Comm'r of Public Safety*, No. A08-1408 (filed Oct. 1, 2009). This approach is largely similar to Klapmeier's alternative filing.

█ But this does not end our inquiry because Klapmeier also petitioned for a writ of prohibition under Minn. R. Civ. App. P. 120, and we granted that petition. A writ of prohibition provides a separate avenue for relief when an adequate, alternative appeal remedy is not available. *See Griggs, Cooper & Co. v. Lauer's, Inc.*, 264 Minn. 338, 119 N.W.2d 850, 852-53 (1962) (explaining that a writ of prohibition is available "in extreme cases where the law provides no other adequate remedy"). Having concluded that the remedy of a petition for review is not available to Klapmeier, we must consider whether a writ of prohibition is available to obtain review of a decision by the court of appeals that taxes costs and disbursements.

We find *Dargi v. City of Golden Valley*, No. A12-2293, Order (Minn. filed Jan. 31, 2013), instructive. In *Dargi*, the petitioner sought a writ of mandamus to compel the court of appeals to tax certain costs and disbursements. *Id.* at 1. We recognized that Rule 139.04 and *Kelly* prohibited an appeal from the taxation of costs and disbursements through a petition for review, but we held that "a petition for a writ of mandamus is the proper route to challenge a failure to grant such an award." *Id.* at 4. Thus, we have relied on the remedy provided by an extraordinary writ to address a decision of the court of appeals in a setting in which the usual appeal remedy—a petition for review—is not available. *See* 3 Eric J. Magnuson, et al., *Minnesota Practice—Appellate Rules Ann.* § 120.4 (2016 ed.) (explaining that extraordinary writs are issued "in instances in which appellate review ... at the conclusion of proceedings would either be unavailable or ineffectual").

█ A writ of prohibition will issue when the court exercises, or is about to exercise, judicial power, the exercise of such power is unauthorized by law, and the result will be an injury for which there is no other adequate remedy. *In re Leslie v. Emerson*, 889 N.W.2d 13, 14 (Minn. 2017). These extraordinary writs—mandamus and prohibition—serve as important tools to oversee the actions of lower courts in the rare instances in which a court refuses to exercise judicial power that is clearly required, or exercises judicial power that is unauthorized by law. *See State v. Hart*, 723 N.W.2d 254 at 257. Because we have already held that an extraordinary writ—mandamus—may be properly sought to address an exercise of judicial power regarding an award of costs and disbursements, we likewise conclude that a writ of prohibition may be sought in proper circumstances to challenge a decision of the court of appeals awarding costs and disbursements.[4]

Accordingly, we now consider the merits of Klapmeier's challenge to the court of

---

4. In recognizing that a petition for a writ of prohibition or mandamus may be used to challenge a taxation decision, we remind parties that, in general, taxation decisions are final, Minn. R. Civ. App. P. 139.04, and petitions for an extraordinary writ are rarely granted, *see Wasmund v. Nunamaker*, 277 Minn. 52, 151 N.W.2d 577, 579 (1967) (explaining that the writ of prohibition "issues only in extreme cases"); *Nationwide Corp. v. Nw. Nat'l Life Ins. Co.*, 251 Minn. 255, 87 N.W.2d 671, 679-80 (1958) ("[M]andamus is an extraordinary legal remedy."). Disagreement with the decision to tax costs and disbursements, by itself, is unlikely to warrant an extraordinary writ. Thus, although we granted the petition for a writ of prohibition here, we will scrutinize future petitions carefully, with a particular focus on whether the petition presents an important issue of law that warrants an exception to the general rule that prohibits an "appeal from the taxation of costs and disbursements." Minn. R. Civ. App. P. 139.04; *see* Minn. R. Civ. App. P. 102 (allowing this court to "suspend the requirements ... of these rules" for "good cause shown").

appeals' decision to tax Cirrus's borrowing costs.

## II.

■ Having determined that a petition for a writ of prohibition is the proper means in this case to seek review of an order allowing the taxation of costs and disbursements, we must next decide whether the writ should issue. A writ of prohibition issues only when (1) a district court exercises, or is about to exercise, judicial or quasi-judicial power; (2) the exercise of such power is unauthorized by law; and (3) the exercise of such power will result in injury for which there is no adequate remedy. *Leslie*, 889 N.W.2d at 14. The first requirement is satisfied here because directing the entry of judgment based on a determination that costs and disbursements should be taxed is an exercise of judicial power. *See Bellows v. Ericson*, 233 Minn. 320, 46 N.W.2d 654, 658 (1951) (issuing a writ of prohibition to prevent a court from enforcing its order). In addition, the third requirement is satisfied because, as discussed above, the order allowing the taxation of costs and disbursements cannot be reviewed through a petition for review and, thus, there is no other adequate remedy. *Dargi*, No. A12-2293, Order at 4. Therefore, the only issue here is whether taxation of the "borrowing costs" Cirrus incurred to secure the supersedeas bond is authorized by law.[5]

■ Minnesota Rule of Civil Appellate Procedure 139.02 states: "Unless otherwise ordered by the appellate court, the prevailing party shall be allowed that party's disbursements necessarily paid or incurred." "Supersedeas bonds are considered costs of appeal." *Servin v. Servin*, 345 N.W.2d 754, 759 (Minn. 1984). We have never decided, however, whether the phrase "disbursements necessarily paid or incurred" includes the interest incurred by obtaining a loan used to secure a supersedeas bond.

Cirrus recognizes that the language of Rule 139.02 does not expressly allow borrowing costs to be taxed. Nevertheless, it argues that we should allow this expense to be taxed because other disbursements that are typically taxed—such as filing fees, transcript costs, and briefing expenses—are also not expressly mentioned in the rule. Furthermore, the only disbursement that is expressly disallowed is "the cost of preparing informal briefs or submissions designated in Rule 128.01, subd. 2." Minn. R. Civ. App. P. 139.02. Cirrus argues that this express prohibition of only one category of disbursements suggests that all other disbursements are taxable. We disagree.

By suggesting that all disbursements are taxable except those that are expressly excluded—informal brief expenses—Cirrus reads the phrase "necessarily paid or incurred" too broadly. We have required more for taxation than mere proof that an

---

**5.** Klapmeier asks us to deny taxation of all of Cirrus's costs and disbursements for "good cause" based on the arguments that Klapmeier makes for denying taxation of borrowing costs. Klapmeier did not raise this argument in his petition for review, and as Klapmeier acknowledges, the expenses Cirrus incurred apart from the borrowing costs are generally recognized as taxable. *See Webb Golden Valley, LLC v. State*, No. A13-2044, Amended Order at 3 (Minn. filed Aug. 20, 2015) (taxing appellate filing fee and brief expenses); *State*

*v. Red Owl Stores, Inc.*, 262 Minn. 31, 115 N.W.2d 643, 660 (1962) (taxing transcript costs); *Henderson v. Nw. Airlines, Inc.*, 231 Minn. 503, 43 N.W.2d 786, 792 (1950) (taxing cost for bond premiums); *see also* Minn. R. Civ. App. P. 139.01 (permitting taxation of $300 in judgment costs). We therefore limit our review to the taxation of Cirrus's borrowing costs, and the Clerk of the Appellate Courts shall tax costs, filing fees, transcript and brief expenses, and $128,000 in bond premiums.

expense was paid or incurred in connection with an appeal. *See, e.g., Muirhead v. Johnson*, 232 Minn. 408, 46 N.W.2d 502, 507 (1951) (declining to tax a portion of the expenses incurred for briefs and the record where "considerable material ... was wholly unnecessary and irrelevant" to the issues on appeal); *see also Webster's Third New International Dictionary* 1510 (2002) (defining "necessarily" as "in such a way that it cannot be otherwise: of necessity: inevitably, unavoidably").

Unlike the borrowing costs at issue here, filing fees, transcript costs, and briefing expenses are paid or incurred because they are necessary—unavoidable—if the appeal is to advance. For example, a fee is necessary to file an appeal.[6] Minn. R. Civ. App. P. 103.01; *see In re Conservatorship of Riebel*, 625 N.W.2d 480, 480 (Minn. 2001) (explaining that an appeal was dismissed in part "for failure to pay the required filing fee"). Similarly, a transcript is necessary to preserve certain issues for appeal. *See Godbout v. Norton*, 262 N.W.2d 374, 376 (Minn. 1977) (explaining that the court "cannot consider a sufficiency-of-evidence issue unless provided with a trial transcript" on appeal). Likewise, a party must file a brief or face the possibility of dismissal. Minn. R. Civ. App. P.

142.02; *see State v. Barrett*, 694 N.W.2d 783, 787 (Minn. 2005) (explaining that the State's pretrial appeal may be dismissed if the State "fails to timely file and serve its brief"). Even bond premiums may be necessary to an appeal when a district court requires a party to post a supersedeas bond as a condition of staying the entry of judgment during an appeal.[7] Minn. R. Civ. App. 108.02, subd. 3; *see Henderson v. Nw. Airlines, Inc.*, 231 Minn. 503, 43 N.W.2d 786, 792 (1950) (finding "no error" in taxing "the premium [for] the appeal bond").[8]

In contrast, borrowing costs do not have the same direct relationship to an appeal because they are not necessarily paid or incurred to allow an appeal to proceed. Rather, borrowing costs are paid or incurred based on circumstances unique to, and decisions made by, the borrower that are unrelated to the appeal, such as interest rates, loan terms, other financing options, ongoing business activities, and asset/liability calculations. Thus, although a court may require a party to post a bond, the party decides how to obtain the money to enable it to do so in light of the party's individual financial circumstances. In other words, *the appeal* does not render the borrowing costs "necessary." The appeal proceeds whether or not the bond is fi-

**6.** An appellate filing fee is not always required, but the rule identifies the circumstances where no filing fee is necessary. *See* Minn. R. Civ. App. P. 103.01, subd. 3. Those circumstances are not present here.

**7.** Contrary to the dissent's assertion, whether bond premiums are necessary does not depend solely on the party's financial situation. According to our rules, the party must post security "in a form and amount that the trial court approves." Minn. R. Civ. App. P. 108.02, subd. 2. Therefore, if the district court requires a supersedeas bond, then bond premiums would necessarily be incurred. In short, it is not the party's financial situation, but rather the court's order, that makes bond premiums necessary.

**8.** The dissent criticizes our distinction between bond premiums and borrowing costs because bond premiums can be avoided if a party allows judgment to be entered against it while the appeal is pending. As noted above, the taxability of bond premiums is not at issue here. But we note that to the extent the dissent argues that bond premiums are not necessary for an appeal to proceed, that argument undermines the dissent's conclusion that the borrowing costs incurred to obtain the supersedeas bond that results in those premiums are taxable as necessarily paid or incurred.

nanced, as was the bond here, through funds borrowed to obtain a letter of credit. In these circumstances, borrowing costs are "necessary" only because the party has determined that a loan, and its required expenses, is the best financial option for reasons that may have nothing to do with the appeal.[9]

The plain language of Rule 139.04 cannot be stretched to cover a party's decision, independent of the appeal, to finance the expenses associated with procuring an appeal bond. In addition, there is a substantial risk of complicating the taxation of disbursements by including party-driven financial decisions in the determination of "necessarily paid or incurred" expenses. In an era of interlocking corporations, wholly owned subsidiaries, and complicated financing vehicles, it may well prove difficult to trace why an interest expense was incurred, how the interest expense was incurred, what the interest expense actually was, or even whether the expense was actually incurred in the first place. *See Rossa v. D.L. Falk Constr., Inc.*, 53 Cal.4th 387, 135 Cal.Rptr.3d 329, 266 P.3d 1022, 1029 (2012) (explaining that "interest charges and related fees for a loan may vary greatly, depending on the creditworthiness of the judgment debtor, current interest rates, and other terms of the loan, rendering such charges unpredictable and

potentially many times greater in amount than other costs").

The majority of courts that have considered this issue agree that borrowing costs are not necessary to the appeal and therefore are not taxable in the circumstances presented here.[10] For example, the United States Court of Appeals for the Second Circuit has held that the "borrowing expense" incurred in collateralizing a bond cannot be taxed "in addition to the premium on a supersedeas bond." *Lerman v. Flynt Distrib. Co.*, 789 F.2d 164, 166 (2d Cir. 1986). Similarly, the Seventh Circuit has allowed the taxation of borrowing costs because the costs were "in lieu of a premium for a supersedeas bond." *Republic Tobacco Co. v. N. Atl. Trading Co.*, 481 F.3d 442, 450 (7th Cir. 2007). The First Circuit has upheld the taxation of the cost of a letter of credit to secure a bond because "there [was] no suggestion that the charge for a letter of credit was either unreasonable or resulted in any greater total cost than a supersedeas bond without supporting collateral." *Bose Corp. v. Consumers Union of U.S., Inc.*, 806 F.2d 304, 305 (1st Cir. 1986). Relying on these decisions, the Ninth Circuit held that borrowing costs associated with obtaining a letter of credit to secure a supersedeas bond could not be taxed "where there was no agreement by

---

**9.** A simple example illustrates this point. Based on financial circumstances, some parties may conclude that it is preferable to obtain a loan or use a credit card to pay the filing fee, transcript costs, or briefing expenses incurred in an appeal. Even though these fee, transcript, or brief expenses are necessarily incurred, we have never held that the borrowing costs incurred as a result of a party's decision to finance these expenses can be taxed.

**10.** We recognize that some courts have reached the opposite conclusion. *See, e.g., Creed v. Apog*, 377 Mass. 522, 386 N.E.2d 1273, 1275 (1979) (allowing taxation of costs to obtain a letter of credit, and noting that

without the collateral, "premiums paid on the bond might well have been higher"); *N. Pointe Ins. Co. v. Steward*, 265 Mich.App. 603, 697 N.W.2d 173, 178 (2005) (explaining that the costs for a letter of credit "are fully taxable as long as the total costs of the bond premiums and the letter of credit are 'reasonable' and are no greater than the total cost of a bond without collateral"). These cases simply illustrate the fact-based nature of a party's borrowing decision. In this case, our rule does not plainly permit taxation of Cirrus's borrowing costs and we cannot conclude that borrowing costs generally are "necessarily paid or incurred" in an appeal.

the parties and where the costs paid for the letter of credit were in addition to the cost of the premiums paid for the supersedeas bonds." *Johnson v. Pac. Lighting Land Co.*, 878 F.2d 297, 298 (9th Cir. 1989) (explaining that the cost for a letter of credit "has been treated as the equivalent of premiums paid for the cost of a supersedeas bond"). Finally, the California Supreme Court denied taxation "for interest expenses and fees incurred to borrow funds to deposit as security for a letter of credit that was procured to secure an appeal bond," despite a court rule [11] that allowed a prevailing party to recover "the cost to procure a surety bond, including the premium and the cost to obtain a letter of credit as collateral." *Rossa*, 135 Cal. Rptr.3d 329,266 P.3d at 1023, 1026, 1030.[12]

We therefore conclude that interest incurred on a loan used to obtain a supersedeas bond is not a taxable appeal expense.[13] Because we conclude that the taxation of borrowing costs is unauthorized by law, all three requirements for the issu-

ance of a writ of prohibition are met and the writ shall issue. The decision of the court of appeals to allow taxation of Cirrus Industries' borrowing costs is reversed. The Clerk of the Appellate Courts is directed to tax costs and disbursements consistent with this opinion.

## CONCLUSION

For the foregoing reasons, the writ of prohibition is issued and the decision of the court of appeals is reversed.

Writ of prohibition issued; reversed.

STRAS, J., took no part in the consideration or decision of this case.

## DISSENT

HUDSON, Justice (dissenting).

I agree with the majority that an application for an extraordinary writ under Minn. R. Civ. App. P. 120 is the proper mechanism to seek review of a court of appeals order that allows taxation of costs and disbursements. But I disagree with

---

11. The rule the California Supreme Court relied on in this decision has since been amended and now explicitly allows these expenses to be taxed. *See Siry Invs., L.P. v. Saeed Farkhondehpour*, 238 Cal.App.4th 725, 189 Cal. Rptr.3d 554, 556 (2015), *as modified on denial of reh'g* (Cal. App. July 9, 2015), *rev. denied* (Cal. Oct. 21, 2015).

12. Relying on these same decisions, the dissent argues that our interpretation is "at odds" with federal precedent because some federal circuit courts have allowed the taxation of borrowing costs "as long as they meet certain criteria." But, as explained above, the "certain criteria" that the federal circuit courts have imposed narrowly limit the circumstances in which borrowing costs are taxable. Thus, the general rule from the federal circuit courts is that borrowing costs are not taxable.

13. We do not agree with the dissent's speculation that this holding will discourage parties involved in high stakes litigation from pursuing meritorious appeals. Although an appeal

may involve significant risk, it may present the opportunity for significant reward as well.

In addition, the dissent makes the unsupported assertion that fees for letters of credit are "routinely taxed" in Minnesota and the dissent worries that this decision will change this routine practice. This assertion might or might not be correct, but we need not decide today whether fees for letters of credit are taxable.

And, finally, as to the dissent's various policy arguments, we note that the result sought by the dissent is simply not supported by the plain language of the rule at issue here. *See Walsh*, 851 N.W.2d at 601 ("When interpreting a [court] rule, we look first to the plain language of the rule and its purpose.... Where the language is plain and unambiguous, that plain language must be followed." (citations omitted) (internal quotation marks omitted)). If a significant expansion of the costs taxable on appeal is desirable, the better route to follow is to amend the rule.

the majority's conclusion that Minn. R. Civ. App. P. 139.02 does not allow taxation of "borrowing costs." The majority's holding finds no support in the plain language of Rule 139.02 or case law, calls into question long-standing Minnesota practice regarding taxation of costs, and disregards the reality faced by parties involved in multi-million-dollar commercial litigation. I respectfully dissent.

The court of appeals taxed appellant Alan Klapmeier a total of $671,863.88 in costs and disbursements after Klapmeier lost on appeal in his case against respondent Cirrus Industries, Inc. The order included $192,000 in premiums paid by Cirrus for obtaining a supersedeas bond of $12 million, as well as $542,583.33 in borrowing costs, which was the interest accrued on the money Cirrus borrowed to finance the letter of credit required to obtain the supersedeas bond. The majority concludes that Rule 139.02 does not authorize the court of appeals to award Cirrus its borrowing costs because they are not expenses that are "necessary—unavoidable—if the appeal is to advance." According to the majority, a filing fee or transcript fee is necessary for an appeal to advance, and "[e]ven bond premiums may be necessary to an appeal." In contrast, "borrowing costs do not have the same direct relationship to an appeal because they are not necessarily paid or incurred to allow an appeal to proceed."

The majority's holding draws arbitrary distinctions, and has no support in the plain language of Rule 139.02 or our case law. In attempting to distinguish borrowing costs from filing fees and transcript fees, the majority explains that "[b]orrowing costs ... are paid or incurred based on circumstances unique to, and decisions made by, the borrower that are unrelated to the appeal, such as interest rates, loan terms, other financing options, ongoing business activities, and asset/liability calculations." They are necessary, says the majority, "only because the party has determined that a loan, and its required expenses, is the best financial option for reasons that may have nothing to do with the appeal." In other words, under the majority's holding, expenses that are incurred in connection with certain taxable costs are non-taxable under Rule 139.02 if they are incurred simply due to the party's financial considerations.

This holding is contrary to the plain language of Rule 139.02, which contains no such restrictions. Rule 139.02 provides that "[u]nless otherwise ordered by the appellate court, the prevailing party shall be allowed that party's disbursements necessarily paid or incurred." Minn. R. Civ. App. P. 139.02. In addition, the rule specifically prohibits the prevailing party from "tax[ing] as a disbursement the cost of preparing informal briefs or submissions designated in Rule 128.01, subd. 2." *Id.* By explicitly identifying informal briefs and submissions as nontaxable items, Rule 139.02 clearly contemplates all other costs and disbursements "necessarily paid or incurred" as taxable. *See, e.g., Staab v. Diocese of St. Cloud*, 853 N.W.2d 713, 718-19 (Minn. 2014) (applying the canon of construction, *expressio unius est exclusio alterius*, to conclude that the "expression of a general rule ... subject to four exceptions ... precludes an interpretation ... that would effectively create a fifth exception"). Thus, the majority's interpretation reads the phrase "necessarily paid or incurred" too narrowly and cannot be squared with the plain language of the rule.

Nor can the majority's holding be reconciled with our precedent allowing the taxation of bond premiums. *See Henderson v. Nw. Airlines, Inc.*, 231 Minn. 503, 43 N.W.2d 786, 792 (1950) (allowing taxation

of bond premiums in the absence of a showing that the costs were excessive). To the extent that the majority interprets Rule 139.02 as allowing taxation of expenses that are only necessary because they are "unavoidable" on appeal, bond premiums would be nontaxable under Rule 139.02 because they are, in fact, avoidable under the majority's definition. First, to proceed on appeal, parties do *not* have to post a supersedeas bond. They can simply allow the judgment to be entered, or use a different form of security. *See* Minn. R. Civ. App. P. 108.02, subd. 3 ("The form of the security may be a supersedeas bond, a letter of credit, a deposit of cash or property with the trial court administrator, or any other form of security that the trial court approves as adequate under the circumstances.").[1] Bond premiums are, hence, avoidable if the party seeking to stay the judgment to proceed on appeal provides security in a different form. Second, although a party seeking a supersedeas bond generally has to pay premiums to the bond provider, there is no rule or practical evidence suggesting that premiums are *always* required. Thus, to adopt the majority's framing, bond premiums are also expenses incurred "only because the party has determined that a [supersedeas bond] ... is the best financial option for reasons that may have nothing to do with the appeal." But under today's holding, these premiums are apparently nontaxable. The majority's ruling is irreconcilable with our

case law on the taxability of bond premiums.

In sum, although neither bond premiums nor borrowing costs are required by law for an appeal to proceed, both expenses are typically incurred—as they were here—in connection with a party's efforts to secure a supersedeas bond for purposes of staying the entry of judgment on appeal. Similar to bond premiums, borrowing costs also "may be necessary to an appeal when a district court requires a party to post a supersedeas bond." Yet, we award prevailing parties the former (bond premiums), but not—under the ruling today—the latter (borrowing costs). The majority fails to justify its differential treatment of the two.[2]

Likewise, fees for obtaining letters of credit are also costs incurred due to a party's financial considerations because they are not always required when one obtains a supersedeas bond. In fact, nothing in the record suggests that Cirrus paid letter-of-credit fees here. But even though letter-of-credit fees have been routinely taxed in Minnesota, they arguably become nontaxable as a result of the majority's holding today. *See e.g., Kelly v. Ellefson,* No. A04-0615, Amended Order at 3 (Minn. App. filed July 10, 2006) (allowing taxation of letter-of-credit costs related to supersedeas bonds, stating that "[t]he cost of collateralizing supersedeas bonds, including

---

1. The majority argues that "whether bond premiums are necessary does not depend solely on the party's financial situation," and that "it is not the party's financial situation, but rather the court's order, that makes bond premiums necessary." This unsupported contention implies that a district court may force a party to post a supersedeas bond even though the party chooses an alternative form of security. But it is not uncommon for the district courts to prefer other security arrangements over supersedeas bonds. *See* Minn. R. Civ. App. P. 108.02 advisory comm.

cmt.—2009 amends. ("Subdivision 3 recognizes that security may be provided in any of several forms.... In many cases, a deposit into court or posting of a letter of credit may be preferable and less expensive.").

2. As the majority correctly notes, the taxability of bond premiums is not at issue, and I do not dispute the taxability of bond premiums. I simply disagree with the majority's inconsistent treatment of two expenses that are both necessary on appeal.

obtaining letters of credit, are routinely taxed in Minnesota" (citing 3 Eric J. Magnuson & David F. Herr, *Minnesota Practice—Appellate Rules Ann.* § 108.4 [3] (2003 ed.))), *rev. denied* (Sept. 18, 2006).

Moreover, today's holding is inconsistent with most federal courts' interpretations of Fed. R. App. P. 39(e), the comparable federal rule regulating taxation of costs. Notably, the language of Rule 139.02 is broader than that of the federal rule. *Compare* Minn. R. Civ. App. P. 139.02 (allowing taxation of "disbursements necessarily paid or incurred" except for "the cost of preparing informal briefs or submissions designated in Rule 128.01, subd. 2"), *with* Fed. R. App. P. 39(e) (specifically designating only four kinds of costs as taxable, including "premiums paid for a supersedeas bond or other bond to preserve rights pending appeal"). Despite the broader language of Rule 139.02, the majority—by limiting the meaning of the phrase "disbursements necessarily paid or incurred" to only those expenses that cannot be characterized as incurred due to a party's special circumstances—unduly narrows the scope of Rule 139.02.

By contrast, although Fed. R. App. P. 39(e) identifies bond premiums as taxable and is otherwise silent on the taxability of other kinds of bond-related costs, most federal circuit courts interpreting the rule have concluded that letter-of-credit fees and borrowing costs are taxable as long as they meet certain criteria. *See Republic Tobacco Co. v. N. Atl. Trading Co.*, 481 F.3d 442, 448-51 (7th Cir. 2007) (allowing taxation of "borrowing costs" in lieu of

bond premiums under Fed. R. App. P. 39(e)); *Bose Corp. v. Consumers Union of U.S., Inc.*, 806 F.2d 304, 305 (1st Cir. 1986) (allowing taxation of letter-of-credit costs that were "[neither] unreasonable [nor] resulted in any greater total cost than a supersedeas bond without supporting collateral" under Fed. R. App. P. 39(e)); *Trans World Airlines, Inc. v. Hughes*, 515 F.2d 173, 178-79 (2d Cir. 1975) (allowing taxation of fees paid for a letter of credit that was obtained instead of a supersedeas bond under Fed. R. App. P. 39(e)). *Cf. Lerman v. Flynt Distrib. Co.*, 789 F.2d 164, 166 (2d Cir. 1986) (holding that "costs of appeal that are agreed to and less expensive substitutes for costs explicitly authorized in Rule 39(e) are allowable" without limiting the *kinds* of costs that parties may recover). The majority's narrow interpretation of the broad language of Rule 139.02 is at odds with federal courts' broader interpretation of the narrower language in Fed. R. App. P. 39(e).

The majority's holding is also untethered from reality because it ignores the financial costs incurred in multi-million-dollar commercial litigation. It is increasingly common for parties engaged in complex business litigation to incur significant expenses in obtaining supersedeas bonds, as evidenced by the size of the financing costs incurred and awarded in this case and many others. By restricting the types of expenses a prevailing party may recover, the majority's holding may discourage high-stakes commercial litigants from pursuing an appeal, *regardless of the merits of the claim*, to avoid incurring large appellate costs that are not taxable.[4] *See* 3 Eric

---

**3.** Although *Minnesota Practice* is not binding on us, we have relied on it for information concerning real-world Minnesota practice. *See, e.g., Mingen v. Mingen*, 679 N.W.2d 724, 726 (Minn. 2004) (citing 3 Eric J. Magnuson & David F. Herr, *Minnesota Practice—Appellate Rules Ann.* § 104.11 (2003 ed.)); *Maxwell*

*Comm'cns v. Webb Publ'g Co.*, 518 N.W.2d 830, 834 n.6 (1994) (citing 3 Eric J. Magnuson, David F. Herr & Roger Haydock, Minnesota Practice—*Appellate Rules Ann.*, 502 (1985)).

**4.** I agree with the majority that where the language of the rule is plain and unambigu-

J. Magnuson, et al., *Minnesota Practice— Appellate Rules Ann.* § 108.1, Authors' Comments (2016 ed.) ("The need for and availability of a supersedeas bond is a significant factor to be considered when making the decision to appeal.").

Therefore, I would hold that the court of appeals had authority under Minn. R. Civ. App. P. 139.02 to tax all necessary and reasonable costs related to obtaining a supersedeas bond on appeal, including borrowing costs. The next step in the analysis is to evaluate the court of appeals' costs order based on the proper standard of review.

We review an award of costs and disbursements for an abuse of discretion, *Kellar v. Von Holtum*, 605 N.W.2d 696, 703 (Minn. 2000), *superseded on other grounds by* Minn. R. Civ. P. 11.03. Here, nothing in the record shows that the court of appeals' decision to tax Klapmeier $542,583.33 in borrowing costs incurred in obtaining a supersedeas bond of $12 million was clearly erroneous. As the court of appeals stated, Cirrus submitted adequate documentation (affidavits, a promissory note, etc.) demonstrating that it incurred these costs, and that no less expensive alternatives existed for obtaining the required supersedeas bond within the time constraints imposed by the district court and Klapmeier. Nor does Klapmeier argue that Cirrus could have secured the loan on better terms from an alternative source. Klapmeier claims that the borrowing costs Cirrus claimed were for an "alleged loan" that was simply a "book entry," but Klapmeier provides no evidence supporting this claim. I recognize that, absent discovery or an evidentiary hearing, Klapmeier had limited opportunities to obtain evidence to refute

the authenticity of the borrowing costs. That said, Klapmeier was in a unique position to evaluate the authenticity of Cirrus's documentation given his previous position as Chief Executive Officer of Cirrus and the parties' protracted litigation surrounding his dismissal. In any event, *Henderson* requires that Klapmeier, as the non-prevailing party, bear the burden to show the claimed borrowing costs were excessive. *See* 43 N.W.2d at 792. Klapmeier made no such showing.

The court of appeals did exactly what we ask and expect it to do: it carefully reviewed the documentation · submitted by Cirrus and determined that the borrowing costs were "necessarily paid or incurred." Absent a showing to the contrary by Klapmeier, the court of appeals acted well within its discretion in awarding Cirrus $542,583.33 in borrowing costs.

Additionally, upon independent review of the record, the costs claimed here for obtaining a supersedeas bond appear reasonable compared with similar costs sought and awarded in other cases. First, the court of appeals has awarded costs of similar sizes paid to a surety as collateral for a supersedeas bond. *See e.g.*, *St. Paul Fire & Marine Ins. Co. v. A.P.I., Inc.*, No. A06-1229, Order at 2 (Minn. App. filed Jan. 3, 2008) (awarding the appellant $618,587.19, including the costs of obtaining a supersedeas bond, because the appellant "established that the claimed amounts were paid to the surety," and the respondent did not identify "any valid basis for denying or reducing the requested taxation"), *rev. denied* (Minn. Dec. 11, 2007). Second, the amount of the costs Cirrus seeks in proportion to the bond value is not excessive. The borrowing costs here, $542,583.33,

---

ous, we must follow the plain language. *Supra* at 396 n. 13; *see Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 601 (Minn. 2014). That is precisely why I dissent from today's holding. As

explained above, the majority imposes on Rule 139.02 restrictions not found in the plain language of the rule.

were about 4.5 percent of the $12 million supersedeas bond. Courts have awarded financing costs of similar or larger sizes in relation to the supersedeas bonds filed, in addition to bond premiums. *See, e.g., Creed v. Apog*, 377 Mass. 522, 386 N.E.2d 1273 (1979) (awarding letter-of-credit costs equal to about 9.8 percent of the bond value awarded for obtaining the bond, in addition to bond premiums); *N. Pointe Ins. Co. v. Steward*, 265 Mich.App. 603, 697 N.W.2d 173, 180 (2005) (awarding letter-of-credit costs equal to about 3.5 percent of the bond value awarded for obtaining the bond, in addition to bond premiums). Thus, the court of appeals did not abuse its discretion in determining that the borrowing costs here were reasonable.

In sum, I would affirm the court of appeals, and hold that the court of appeals had authority under Minn. R. Civ. App. P. 139.02 to permit taxation of the borrowing costs at issue and did not abuse its discretion in awarding Cirrus its borrowing costs. Unquestionably, the borrowing costs here are large and warrant close scrutiny, and the court of appeals *did* scrutinize these costs. Moreover, at the risk of stating the obvious, the borrowing costs here are simply a function of the size of the judgment Cirrus was required to secure.[5] But regardless of the amount, our analysis must be based on the relevant law and principles. To that end, Rule 139.02 provides that the court of appeals has discretion to award a prevailing party "disbursements necessarily paid or incurred." Minn. R. Civ. App. P. 139.02. While the rule does not explicitly allow borrowing costs or otherwise mention interest, it does not expressly allow any of the costs this court typically awards, such as bond premiums,

*Henderson*, 43 N.W.2d at 792. We have also held that whether or not a court should allow taxation of costs related to a supersedeas bond depends on the reasonableness of the costs. *Id.* Again, here, Cirrus submitted adequate documentation to demonstrate that the borrowing costs were "necessarily incurred" and reasonable. Thus, the court of appeals did not abuse its discretion in awarding Cirrus its borrowing costs. I respectfully dissent.

---

**5.** To the extent the majority's decision is animated by concerns regarding the court of appeals' authority to assess and tax interest and other costs related to supersedeas bonds in commercial litigation, the proper method to allay such concerns is to refer Minn. R. Civ. App. P. 139.02 to the appropriate rulemaking committee for consideration and potential amendment.